IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORENZO NICHOLS,<br><br>    Plaintiff<br><br>    v.<br><br>JERI SMOCK, et al.,<br><br>    Defendants | Case No. 1:19-cv-164 Erie<br><br>SUSAN PARADISE BAXTER<br>UNITED STATES DISTRICT JUDGE<br><br>RICHARD A. LANZILLO<br>UNITED STATES MAGISTRATE JUDGE<br><br>REPORT AND RECOMMENDATION<br>ON DEFENDANT'S MOTION TO<br>DISMISS [ECF No. 44] |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that Defendant's motion to dismiss [ECF No. 44] be granted.

II.    Report

    A.    Background

Plaintiff Lorenzo Nichols, an inmate at the State Correctional Institution at Albion (SCI-Albion), initiated this pro se civil rights action against Jeri Smock, the Correctional Health Care Administrator (CHCA) at SCI-Albion, and two health care providers, Dr. Letizio and PA Stroup. ECF No. 41. Nichols alleges that Defendants violated the Eighth Amendment to the United States Constitution by failing to provide adequate medical treatment for his diabetes, culminating in an alleged incident of diabetic ketoacidosis. He seeks compensatory and punitive damages pursuant to 42 U.S.C. § 1983.

1

Nichols' claims stem from his dissatisfaction with medical treatment provided by Stroup and Letizio in response to his complaints of fatigue, tiredness, dry mouth, frequent urination, and weight loss. ECF No. 41 at 3. Based on his symptoms, Nichols visited the medical department at SCI-Albion on May 8, 2018, and expressed to Stroup that he believed he might be diabetic. *Id.* Stroup agreed to order blood work but never did. *Id.* Several days later, Letizio examined Nichols and informed him that he might have diabetes and that he would order a series of tests and blood work. *Id.* Nichols asked Letizio to check his blood glucose level immediately by pricking his finger with a glucose meter but Letizio refused. *Id.*

On May 17, 2018, Nichols made an emergency visit to the medical department with worsening symptoms and again requested a blood glucose test. *Id.* A nurse tested his blood glucose level and determined that it was 552 mg/dl, well above the normal level. *Id.* Nichols was sent to UPMC Hamot Hospital where his blood glucose level was measured at 700 mg/dl. *Id.* He remained at the hospital for five days while he was treated for diabetic ketoacidosis. *Id.*

After returning to SCI-Albion, Nichols filed a grievance concerning the medical care provided by Stroup and Letizio. ECF No. 41-1. The grievance was assigned to Smock for initial review. ECF No. 41-2. After summarizing Nichol's medical history, Smock denied his grievance, stating:

> Dr. Letizio was appropriate in ordering labs for you to determine the exact cause of your symptoms. He had also scheduled a follow up appt to discuss the results of those labs with you, which again was appropriate medical care.
>
> You came to Medical on 5/17/18 as an emergency with an elevated glucose level and were transferred to Hamot Hospital for treatment. On 5/20/18 you were discharged back to Medical at Albion and remained in the infirmary until 5/21/18 after being assessed by the Physician. You were ordered an insulin regimen, placed on the diabetic Chronic Care scheduled and discharged back to Gen Pop. On May 31 you were seen again by PA Stroup who . . . discussed diabetic teaching and the

2

> importance of arriving for your daily glucose checks, foot care and neuropathy. It is noted he spent 45 minutes with you reviewing the information and answering your questions. The normal time frame for a sick call visit is 15 minutes.
>
> I am denying your grievance and your request for monetary compensation as I find no indication that you were not treated appropriately. You did not submit sick call slips to be seen for your concerns of diabetes, the Provider responded timely and appropriately to your Unit Manager's concerns regarding recent weight loss. The nurse that saw you as an emergency on the 17th responded appropriately and you received timely medical intervention for your symptoms.

*Id.* Nichols maintains that Smock's response "misconstrued all of the facts involved in an attempt to make [him] look like a liar" and to shift blame to him. ECF No. 41.

Presently pending before the Court is Defendant Smock's motion to dismiss.[1] ECF No. 44. Nichols has filed a brief in opposition to Smock's motion. ECF No. 47. As such, this matter is ripe for disposition.

B. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court

---

[1] Stroup and Letizio filed an answer to the amended complaint. ECF No. 43.

3

must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286). *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Plaintiff is proceeding pro se, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read a pro se litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

C.  Analysis

Nichols contends that each of the Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment by displaying deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976) (stating that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation omitted). To establish a violation of his constitutional right to adequate medical care, a plaintiff is required to allege facts that demonstrate: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*,

991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Critically, however, CHCA Smock is not a physician or health care provider. *See Whitehead v. Thomas*, 2017 WL 2664490, at *7 (W.D. Pa. May 23, 2017) ("Courts in the Third Circuit have recognized that CHCAs are 'undisputably administrators, not doctors'") (quoting *Thomas v. Dragovich*, 142 Fed. Appx. 33, 39 (3d Cir. 2005)). As frequently noted by the Court of Appeals, prison officials who are not physicians cannot be considered deliberately indifferent simply because they fail to respond directly to the medical complaints of a prisoner who is already in the care of the prison's physician. *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). See also *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement or deliberate indifference."). Rather, they "will generally be justified in believing that the prisoner is in capable hands" if the "prisoner is under the care of medical experts." *Thomas*, 142 Fed. Appx. at 39.

Here, there is no dispute that Nichols received treatment from the prison's medical staff in response to his medical complaints. Because he was under the care of medical personnel, he cannot sustain a claim for medical indifference against a non-physician such as Smock. *See, e.g., In re Wetzel*, 2016 WL 4945315, at *3 (W.D. Pa. Sep. 16, 2016) (rejecting a claim of deliberate indifference against a non-medical defendant because the plaintiff acknowledged that he had received treatment from prison physicians); *Pearson v. Prison Health Serv.*, 850 F.3d 526, 543 (3d Cir. 2017) ("As our precedent makes clear, 'a non-medical prison official' cannot be 'charge[d] with the Eighth Amendment scienter requirement of deliberate indifference' when the

6

'prisoner is under the care of medical experts' and the official does not have 'a reason to believe (or actual knowledge) that prison doctors or their assistances are mistreating (or not treating) a prisoner.'") (quoting *Spruill*, 372 F.3d at 236).

Nichols counters that Smock should be held liable because she "is the supervisor of Medical [Defendants] Stroup and Letizio" and failed to train and supervise them to ensure that he received adequate care. ECF No. 47 at 6. It is axiomatic, however, that a § 1983 plaintiff "cannot rely solely on *respondeat superior* as a theory of liability." *Brooks v. Beard*, 167 Fed. Appx. 923, 925 (3d Cir. 2006). Rather, liability can only be imposed upon supervisory officials if that official played an "affirmative part" in the complained-of misconduct. *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986). Nichols' allegations of personal involvement against Smock stem entirely from her role in the grievance review process. It is "well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." *Mearin v. Swartz*, 951 F.Supp.2d 776, 782 (W.D. Pa. 2013). *See also Mincy v. Chmielsewski*, 508 Fed. Appx. 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."). Courts have routinely relied on this principle to dismiss civil rights allegations against prison officials, including health care administrators, whose only knowledge of the alleged violation stemmed from their participation in the grievance process.[2] *See, e.g., Brown v. Nicholson*, 2020 WL 610523, at *6 (E.D. Pa. Feb. 7, 2020) (dismissing claim against prison CHCA who "denied [plaintiff's] grievance . . . stating

---

[2] Nichols also avers that he sent Smock an email on March 11, 2018, complaining about his medical care. ECF No. 47 at 6. Neither this allegation nor the underlying email is included in his amended complaint or any of the attached exhibits. *See Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985) (arguments made in briefs "are not evidence"); *Bracken v. Cty. of Allegheny*, 2017 WL 5593451, at *2 (W.D. Pa. Nov. 21, 2017) ("A pleading may not be amended by a brief in opposition to a motion to dismiss."). In any event, as noted above, Nichols was already in the care of prison medical staff at the time he sent the alleged email.

7

that he had received appropriate medical attention for his reported complaint"); *Beale v. Wetzel*, 2015 WL 2449622, at *5 (W.D. Pa. May 21, 2015) (dismissing claims against senior prison officials because the only allegations against them arose in the context of their participation in an administrative appeal process); *Mearin*, 951 F.Supp.2d at 782 (same). The Court reaches the same conclusion here.

    D.  Leave to amend

The Court of Appeals for the Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction is equally applicable to pro se litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

In the instant case, Nichols has already amended his complaint once in response to the defects identified in Smock's motion to dismiss. Based on the well-established legal principles discussed above, it is apparent that a second attempt at amendment would be similarly futile. *Baker v. Moon Area Sch. Dist.*, 2018 WL 40571719, at *8 (W.D. Pa. Aug. 27, 2018) (noting that courts "need not provide endless opportunities for amendment, especially where such opportunity already has been enjoyed") (quoting *Taylor v. Pilewski*, 2008 WL 4861446, at *3 (W.D. Pa. Nov. 7, 2008)). As such, it is recommended that further leave to amend be denied as futile.

III.    Conclusion

For the reasons stated herein, it is respectfully recommended that Defendant's motion to dismiss [ECF No. 44] be granted. The Clerk should be directed to terminate Smock from this action.

IV.    Notice

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. *See* Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. *See Brightwell v. Lehman*, 637 F.3d 187, 194 n.7 (3d Cir. 2011); *Nara v. Frank*, 488 F.3d 187 (3d Cir. 2007).

RICHARD A. LANZILLO<br>
United States Magistrate Judge

Dated: August 4, 2020